**Kathleen BEAUCHAMP, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 97–CV–6372T.**

United States District Court,
W.D. New York.

May 11, 1998.

Arnold R. Petralia, Petralia, Webb & O'Connell, P.C., Rochester, NY, for Plaintiff.

Brian M. McCarthy, Asst. U.S. Atty., Rochester, NY, George P. Eliopoulos, U.S. Department of Justice, Tax Division, Washington, DC, for Defendant.

## DECISION and ORDER

TELESCA, District Judge.

### INTRODUCTION

Plaintiff, Kathleen Beauchamp, brings this action pursuant to Internal Revenue Code § 6672 and § 1346 seeking a refund for taxes, penalties, and interest which she paid on March 31, 1995 to the Internal Revenue Service ("IRS") to satisfy the tax liabilities of her estranged husband, Claude Beauchamp. The IRS seized her property pursuant to a tax levy and, in order to secure the immediate return of her personal property, she paid $48,325.35 to the IRS insisting, however, that she only owed $1,858.03 and the balance was her husband's responsibility.

Plaintiff filed this action on August 27, 1997. The Government applied for an extension of time to interpose its answer which was extended to November 28, 1997. The defendant failed to answer or move and instead on December 1, 1997 filed a motion to stay the case pending the resolution of a contemplated criminal action against the estranged husband, Claude Beauchamp. In a Decision dated January 16, 1998, this Court denied the Government's motion for a stay and directed the Government to formalize its motion to dismiss and deferred determination of the plaintiff's motion for default and summary judgment.

The Government now argues that this Court lacks subject matter jurisdiction of this case because plaintiff's exclusive remedy was a wrongful levy action for which the statute of limitations had expired.

I hold that the plaintiff has standing to bring this action for a refund under 28 U.S.C. § 1346(a)(1) pursuant to the Supreme Court's decision in *United States v. Williams,* 514 U.S. 527, 115 S.Ct. 1611, 131 L.Ed.2d 608 (1995). The Government's motion to dismiss is denied.

### BACKGROUND

The income tax liabilities at issue involve the Beauchamps' *joint* personal income tax liabilities for 1990, Claude Beauchamp's personal income tax liabilities for the years 1991–1992, and a trust fund recovery penalty (under 26 U.S.C. § 6672) assessed against Claude and Kathleen Beauchamp for employment tax liabilities of Chessman Security Systems, Inc. ("Chessman").

Kathleen Beauchamp insists that she is not responsible for any of these taxes because (1) she never signed a joint return with her husband Claude for the 1990 tax year and, therefore, is an "innocent spouse"; (2) she has no liability for her estranged husband's personal tax liabilities for the 1991–1992 tax years; and (3) she was not an owner of Chessman, nor was she a "responsible person" (i.e. did not write checks, had no control of bills, etc.) and, thus, is not liable for the employment tax liability assessed.

Kathleen and Claude entered into a Separation Agreement in December of 1989 and essentially have been living separate and apart since that time. However, in February of 1995, they were living together at 350 Westminster Road, Rochester, New York. Kathleen Beauchamp alleges that on February 2, 1995, while she was home alone, agents from the IRS Criminal Investigation Division entered the apartment to search for records of Claude Beauchamp and Chessman. She claims that the agents had guns and were extremely harassing to her. She also alleges that additional agents from the IRS Collection Office arrived and seized all of the personal property in the apartment (including furniture, paintings, jewelry, china, houseware items, etc.) without regard to whether the items belonged to her or Claude Beauchamp.

Ms. Beauchamp insists that the majority of the items seized by the IRS belonged to her pursuant to the 1989 Separation Agreement in which she relinquished all of her ownership interest in Chessman in exchange for the majority of the marital personal property. The IRS would not accept that explanation, seized the property pursuant to the tax

levy and told her that the only way she could receive the immediate return of the property would be to pay the IRS $48,325.35 in satisfaction of the tax lien.

Plaintiff then borrowed the money necessary from a personal friend to pay the IRS $48,325.35 in order to obtain the return of her personal property. She insists that she only owes the IRS $1,858 .03 but the Government disagrees and claims that she owes approximately $24,000 of the total amount of the levy. The plaintiff also explains that on January 8, 1997 she filed the proper administrative claims for a refund of the money paid to the IRS but has yet to receive a response. Plaintiff then filed this action on August 27, 1997.

Pending before the Court are the Government's motion to dismiss portions of the complaint for lack of subject matter jurisdiction and plaintiff's cross motions for default judgment and for summary judgment which this Court previously held in abeyance.

## DISCUSSION

### Motion to Dismiss

#### A. Wrongful Levy As Exclusive Remedy

The Government asserts that Counts III and IV of plaintiff's complaint should be dismissed for lack of subject matter jurisdiction. Those Counts relate to plaintiff's claim for a refund of the monies she paid to the IRS in order to redeem her property which had been seized by the IRS in satisfaction of, *inter alia*, her husband's individual income tax liabilities for the 1991 and 1992 tax years. With respect to those tax liabilities, both parties apparently agree that only Claude Beauchamp was personally liable for that portion (i.e. Claude's individual income tax for 1991 and 1992) of the total tax liability which Mrs. Beauchamp paid in order to recover her seized property from the IRS.

Mrs. Beauchamp seeks a refund under 28 U.S.C. § 1346(a)(1), which grants federal courts jurisdiction to hear "[a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected." 28 U.S.C. § 1346(a)(1).

The Government insists that it has not waived sovereign immunity with respect to the plaintiff's claim to recover a refund for the tax she paid which was not assessed against her, but against "a third-party"—her husband. The Government insists that Mrs. Beauchamp's "exclusive remedy" was to bring an action for wrongful levy under 26 U.S.C. § 7426(a)(1) which must be commenced within nine months of the claim. The plaintiff having failed to do so, the Government now insists that her claim is time-barred.

In support of its argument, the IRS cites *Williams v. United States*, 947 F.2d 37 (2nd Cir.1991), in which the Second Circuit held that "[t]he sole remedy available to an individual...who claims an interest in property that has been levied upon by the IRS for the purpose of satisfying the tax liability of another person, is a wrongful levy action asserted under 26 U.S.C. § 7426(a)(1)." *Id.* at 39. However, the continued viability of the Second Circuit's holding is questionable in light of the subsequent United States Supreme Court case of *United States v. Williams*, 514 U.S. 527, 115 S.Ct. 1611, 131 L.Ed.2d 608 (1995) (same surname but unrelated to Second Circuit *Williams* case).

The Supreme Court was presented with the issue of "whether respondent Lori Williams, who paid a tax under protest to remove a lien on her property, had standing to bring a refund claim under 28 U.S.C. § 1346(a)(1), even though the tax she paid was assessed against a third party" (her husband). *Id.* The Court held that Ms. Williams did have standing to sue for a refund under the "broad language" of 28 U.S.C. § 1346(a)(1) which gives federal courts jurisdiction to hear "any civil action against the United States for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected ...". *Id.* 115 S.Ct. at 1614.

The facts of the *Williams* case are strikingly similar to the facts of this case. Lori Williams separated from her husband and, as part of the property settlement, received full ownership of their home. After signing a contract to sell the home, she learned that the IRS had placed several tax liens (totally

$41,000) on the property in an effort to collect taxes which had been assessed against her husband only. There was no dispute that Mrs. Williams was not responsible for the assessed taxes which supported the liens. The IRS filed the tax liens on the property *after* the property had been transferred to her pursuant to the property settlement, but she did not discover them until seven days prior to the scheduled closing date. In order to transfer the property to the buyer free of all liens and encumbrances, as she was required to do in the contract for the sale of the house, Mrs. Williams chose to pay the tax in order to clear the title before closing. Accordingly, she authorized, under protest, the disbursement of $41,937 from the sale proceeds to the IRS in satisfaction of her husband's tax debt.

Mrs. Williams thereafter brought a suit for a refund and the IRS argued that she lacked standing under the refund provision of 28 U.S.C. § 1346(a)(1), since she was not the "taxpayer." The IRS also argued that under 26 U.S.C. § 7422, a party may not bring a refund action without first exhausting administrative remedies (i.e. filing a claim for a refund); and that under 26 U.S.C. § 6511, only a "taxpayer" may exhaust; and that Mrs. Williams was not the "taxpayer" because she was not the person against whom the tax had been assessed. The Supreme Court did not struggle to reject this convoluted argument advanced by the Government, holding that the Government's narrow interpretation of "taxpayer" was incorrect. The Supreme Court noted that, under § 7701(a)(14), the term "taxpayer" is defined as "any person subject to any internal revenue tax," and found that "[i]n placing a lien on her home and then accepting her tax payment under protest, the Government surely subjected Williams to a tax, even though she was not the assessed party." *Id.* 514 U.S. at 535, 115 S.Ct. 1611. The Court held that Ms. Williams had standing to sue for a refund under the "broad language" of 28 U.S.C. § 1346(a)(1).

The Government argues that the reasoning in *United States v. Williams*, 515 U.S. 527 (1995) does not apply to the case at hand because that case involved a *lien* while the instant case involves a *levy*. The IRS relies on a 1991 Second Circuit case, *Williams v. United States*, 947 F.2d 37 (1991) in support of its argument that "the sole remedy available to an individual...who claims that an interest in property has been levied upon by the IRS for the purpose of satisfying the tax liability of another person is a wrongful levy action asserted under 26 U.S.C. § 7426(a)(1)." *Id.* at 39.

Defendant also looks to *dicta* in the Supreme Court's *Williams* decision for support by pointing to the Court's discussion that Lori Williams had no other alternatives available, including the fact that she could not have pursued a wrongful levy action under 26 U.S.C. § 7426 because she had not been subjected to a levy. *Id.* 514 U.S. at 536, 115 S.Ct. 1611. Thus, defendant argues that the *Williams* Court did not intend its holding to extend to a levy situation. I disagree.

The Court's discussion of whether the wrongful levy action was available to Ms. Williams arose in the context of addressing the three proposed alternatives put forth by the government. The Court addressed each of the government's proposed remedies separately and found that none of them were realistically available to Ms. Williams. One of the proposed remedies was the wrongful levy action, which the Court correctly noted was not available to Williams because she had not been subjected to a levy. This observation by the Court in *dicta* does not affect the Court's broader holding that "28 U.S.C. § 1346(a)(1) clearly allows one from whom taxes are erroneously or illegally collected to sue for a refund of those taxes." *Id.* at 536, 115 S.Ct. 1611. That is precisely the case here.

■ The facts of the instant case fall squarely under the Supreme Court's *United States v. Williams* holding and the "lien vs. levy" distinction advanced by the IRS is not relevant. Plaintiff argues that the key factor which brings her under the *United States v. Williams* holding is that Mrs. Beauchamp *affirmatively paid the tax* and then sought a post-deprivation remedy, a refund. As the Supreme Court noted,

[w]e do not agree with the Government that, if § 1346(a)(1) authorizes some third

party suits, the levy, quiet-title, and separate-fund remedies become superfluous. **Section 1346(a)(1) is a postdeprivation remedy, available only if the taxpayer has paid the Government in full.** The other remedies offer predeprivation relief. *United States v. Williams,* 514 U.S. at 538, 115 S.Ct. at 1619 (internal citations omitted) (emphasis supplied). Although the *Williams* case arose in a lien situation rather than a levy situation, Mrs. Beauchamp here has standing to seek a refund under the "broad language" of 28 U.S.C. § 1346(a)(1). Like Lori Williams, Mrs. Beauchamp "paid the government in full" and she earned the right to pursue her post-deprivation remedy to sue for a refund in federal court.

Plaintiff makes an additional compelling argument independent of the *Williams* analysis. She argues that a wrongful levy action could not have been her "exclusive remedy" as the government argues, because, under the facts of her case, a wrongful levy action was not available to her because a wrongful levy action under § 7426 is available only to "persons other than the taxpayer." In this case, Mrs. Beauchamp clearly would have been classified by the IRS as the "taxpayer" for at least a portion of the tax liability which the IRS sought to collect with the levy on her personal property. Also, the Supreme Court in *Williams* held that by "accepting [the] tax payment under protest, the Government surely subjected [Mrs.] Williams to a tax, even though she was not the assessed party." *Id.* 514 U.S. at 534, 115 S.Ct. 1611.

The IRS contends that Mrs. Beauchamp was personally liable for the tax liabilities for the 1990 joint income tax return ($12,843) and for the Chessman employment withholding tax penalty ($5,629), as well as Mrs. Beauchamp's own personal income tax for 1992 ($1,858). The only portion of the tax liability which the IRS concedes plaintiff was not personally liable for was Claude Beauchamp's 1991 and 1992 personal income taxes ($24,850). The IRS cannot now argue that Mrs. Beauchamp was not the "taxpayer" and, therefore, was exclusively relegated to commencing a wrongful levy action rather than paying the tax (as she did) to redeem her property and then seeking a refund.

It was the actions of the IRS which put Mrs. Beauchamp in this "Catch 22" position. The IRS made only *one seizure* of property to collect *all* of the tax liabilities (Mrs. Beauchamp's individual liability, Mr. Beauchamp's individual liability, and their alleged joint liability) without distinguishing which property was being seized to satisfy which liability. In order for plaintiff to recover her furniture and other personal belongings, she was left with no alternative except to pay the *entire* tax (hers and her husband's) and then seek a refund for that portion which she did not owe. The IRS insisted upon payment in full satisfaction of its lien. Accepting the Government's argument that she cannot now seek a refund for the taxes she does not owe (but which were happily collected from her by the IRS) would subject her to a manifest injustice.

I find that plaintiff has standing to bring this refund action under the plain language of 28 U.S.C. § 1346(a) and the broad interpretation given to that provision by the United State Supreme Court. The Government's interpretation of the relief available under § 1346(a) is simply too narrow. The essence of defendant's argument is that § 1346 is available only to challenge a wrongfully *assessed* tax, not to challenge the wrongful *collection* of a tax. However, the plain language of § 1346(a) is not limited to wrongful assessment, it specifically contemplates a remedy for wrongful collection. The broad language of § 1346(a) waives sovereign immunity and confers jurisdiction on district courts for

> [a]ny civil action against the United States for the recovery of **any** internal-revenue tax alleged to have been **erroneously or illegally** assessed **or collected,** or any penalty claimed to have been collected without authority **or any sum** alleged to have been excessive **or any manner wrongfully collected** under the internal revenue laws.

28 U.S.C. § 1346(a) (emphasis added). As the Supreme Court noted, "[plaintiff's] plea to recover a tax 'erroneously...collected' falls squarely within this language." *United States v. Williams,* 514 U.S. at 532, 115 S.Ct. 1611.

### B. Lack of Subject Matter Jurisdiction Due to "Doctrine of Variance" with Respect to Innocent Spouse and Estoppel Defenses.

Defendant also asserts that two portions of plaintiff's complaint should be dismissed for lack of subject matter jurisdiction based upon the "doctrine of variance." Defendant argues that plaintiff failed to raise the "innocent spouse" defense and the "estoppel" defense in her administrative claim for a refund and, therefore, she is barred from raising those grounds in her federal action. The Government also argues that this Court lacks subject matter jurisdiction to entertain those claims since the government has not waived its sovereign immunity with respect thereto, citing 26 U.S.C. § 7422(a), which requires a taxpayer to file an administrative claim for a refund (which sets forth the basis of the claim) prior to filing a lawsuit.

Plaintiff explains that her administrative claims for a refund can fairly be read as including the "innocent spouse" and "estoppel" defenses such that the IRS had sufficient notice of those grounds prior to commencement of this action for refund. Plaintiff also argues that failure to raise a defense in the administrative claim is not a jurisdictional issue, but rather merely a condition precedent which can be waived by the government, citing *Angelus Milling Co. v. Commissioner*, 325 U.S. 293, 297, 65 S.Ct. 1162, 89 L.Ed. 1619 (1945). Plaintiff also argues that the defendant waived those defenses by failing to raise them in a timely answer or motion because, prior to serving the instant motion, the defendant was in default.[1] Moreover, the IRS has yet to reply to plaintiff's administrative claim for a refund filed on January 8, 1997.

I find that the issue of whether the IRS had notice of plaintiff's intent to raise the innocent spouse defense and the estoppel defense are factually-laden questions which cannot be resolved on the face of the pleadings in a Rule 12(b) motion to dismiss. Ac-cordingly, defendant's motion to dismiss those claims is denied without prejudice.

### CONCLUSION

On February 2, 1995, the IRS seized over $48,000 worth of personal property from Kathleen Beauchamp as a levy to collect taxes which had been assessed against Kathleen Beauchamp personally ($1,858), Claude Beauchamp personally ($24,850), and both of them jointly ($12,843 and $5,629). Mrs. Beauchamp was forced to borrow $48,325 which she in turn paid to the IRS to recover her furniture, jewelry, and other personal belongings. She now seeks a refund for the amount of taxes she paid which she claims she did not owe.

After accepting her payment of over $48,000, the IRS now argues that Mrs. Beauchamp lacks standing to seek a refund with respect to the $24,850 which was Mr. Beauchamp's personal tax liability because she was not the "taxpayer" with respect to that amount. The IRS contends that plaintiff's "exclusive remedy" was a wrongful levy action and that, since the nine-month statute of limitations has expired, she is now time-barred from challenging the levy.

I find that the plaintiff has standing to bring this action seeking a refund of any amounts which she paid to the IRS and which she alleges were "erroneously assessed or collected." The defendant's motion to dismiss is denied. Plaintiff's motions for default and for summary judgment are denied as there are material questions of fact remaining on both issues.

ALL OF THE ABOVE IS SO ORDERED.

---

1. It remains to be determined whether the defendant was in default from November 28, 1997 until February 17, 1998, for failure to file a timely answer or a Rule 12 motion, which the defendant did not do until it was specifically ordered to do so by this Court. Moreover, the Government's motion for a stay on December 1, 1997 does not constitute a responsive pleading as required by Rule 12.