*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 08a0155p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

SALVATORE MUNACO,

        *Plaintiff-Appellant,*

    *v.*

UNITED STATES OF AMERICA,

        *Defendant-Appellee.*

No. 07-1836

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 06-14019—Victoria A. Roberts, District Judge.

Argued: March 17, 2008

Decided and Filed: April 15, 2008

Before: BOGGS, Chief Judge; ROGERS, Circuit Judge; and SHADUR, District Judge.[*]

---

**COUNSEL**

**ARGUED:** Kenneth J. Wrobel, Jr., KENNETH J. WROBEL, JR., P.C., Birmingham, Michigan, for Appellant. John A. Nolet, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Kenneth J. Wrobel, Jr., KENNETH J. WROBEL, JR., P.C., Birmingham, Michigan, for Appellant. John A. Nolet, Bruce R. Ellisen, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

---

**OPINION**

---

BOGGS, Chief Judge. Plaintiff Salvatore Munaco paid the federal government $326,061.34 to satisfy a federal tax lien placed on real property he owned in Florida. Believing that the lien was invalid, Munaco sued for a refund in federal district court. Unfortunately for Munaco, the district court ruled correctly that it lacked jurisdiction because the United States is immune from suit. Even more unfortunately, Munaco's failure to pursue the prescribed statutory remedies available to a person in his position means that he has no further remedy available to him. We affirm the district court's dismissal of Munaco's claim for lack of subject-matter jurisdiction.

---

[*] The Honorable Milton I. Shadur, United States District Judge for the Northern District of Illinois, sitting by designation.

**I**

On January 7, 2005, Salvatore Munaco acquired title to real property in Palm Beach County, Florida, from Stephen and Dana Roncelli. The same day, he recorded a quitclaim deed with the Palm Beach County Register of Deeds.[1] The Roncellis owed tax liabilities to the United States. On March 17, 2005, the IRS issued a Notice of Federal Tax Lien in the amount of $286,814.24 against the Roncellis. On April 26, the government recorded with the Palm Beach County Register of Deeds a Notice of Federal Tax Lien against the real property that Munaco had purchased in January.

On July 16, 2005, Munaco entered into an agreement to sell the property to a buyer named Copple and was scheduled to transfer title in September 2005. In the course of searching title for the property, Munaco discovered the tax lien. He contacted the IRS and objected to the lien. Munaco says that the IRS informed him that if he conditioned or qualified the lien payment in any way, his title would not be clear and marketable. In order to close his sale, on September 19, 2005, Munaco directed the title company to pay $326,061.34 from the sale proceeds to the United States to discharge the tax lien.[2]

On September 12, 2006, Munaco filed suit in federal court in the Eastern District of Michigan. He alleged that the federal tax lien was not valid because the Roncellis did not own the property at the time that the lien was recorded; therefore, the lien was invalid under 26 U.S.C. § 6323. Accordingly, Munaco sought damages of $326,061.34 (the amount he paid to satisfy the lien) plus interest. He also sued for slander of title and conversion, seeking additional unspecified damages for those claims, plus attorney fees.

On June 1, 2007, the district court granted the government's motion to dismiss on the ground that it lacked subject-matter jurisdiction over the case because the government had not waived sovereign immunity. Munaco appealed. Our review is de novo. *Wagenknecht v. United States*, 509 F.3d 729, 731 (6th Cir. 2007).

**II**

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983); *see also Cohens v. Virgina*, 19 U.S. (6 Wheat.) 264, 411-12 (1821) ("The universally received opinion is, that no suit can be commenced or prosecuted against the United States."); THE FEDERALIST No. 81, at 487-88 (Alexander Hamilton) (Clinton Rossiter ed., 1961) ("It is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent."). When the federal government has waived its immunity and consented to suit, we strictly construe any waiver, and the putative plaintiff must abide the terms of the consent. *See Young v. United States*, 332 F.3d 893, 895 (6th Cir. 2003). As Justice Holmes remarked: "Men must turn square corners when they deal with the Government. If it attaches even purely formal conditions to its consent to be sued those conditions must be complied with." *Rock Island, A. & L. R. Co. v. United States*, 254 U.S. 141, 142 (1920). This is true even when the square corners constitute a "one-way street" in the government's favor. *See Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 387-88 (1947) (Jackson, J., dissenting) ("It is very well to say that those who deal with the Government

---

[1] On September 21, 2005, Munaco filed a "Corrective Quit Claim Deed" because the original deed he filed in January 2005 lacked a notary seal. In addressing the merits of Munaco's claim, the government argues that this technical defect is sufficient to defeat Munaco's claims against the government. Given our holding that the federal courts lack jurisdiction over this case, we do not reach this argument.

[2] Neither party explains why the actual amount paid exceeded the amount stated in the lien notice by nearly $40,000.

should turn square corners.  But there is no reason why the square corners should constitute a one-way street").

In this case, Munaco failed to turn any corners, let alone square ones.  Munaco filed suit seeking a refund of the money he paid to clear the tax lien, and he argued that the lien was invalid against him since he had recorded his deed from the Roncellis before the government recorded the tax lien.  He alleged that jurisdiction was proper under 28 U.S.C. § 1346(a)(1), which grants district courts jurisdiction over "[a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected . . . ."[3]  Relevant to this appeal, the government argued that it had not waived sovereign immunity because Munaco had ignored the administrative remedies available to him under Sections 6325(b)(4) and 7426(a)(4) of Title 26.  The district court agreed and held that sovereign immunity barred Munaco's suit because he had not pursued his administrative remedies.

Notably, if this case had arisen some years ago, Munaco would have been successful because of a then-controlling Supreme Court precedent in his favor.  The Supreme Court's 1995 decision in *United States v. Williams*, 514 U.S. 527 (1995), held that federal courts could hear a similarly-situated plaintiff's claim under § 1346's general grant of jurisdiction over tax cases.  However, in 1998, Congress responded to *Williams* and amended the Internal Revenue Code to provide a specific statutory remedy for a person in Munaco's position.  The question presented is whether suit under § 1346 is still proper, even though Munaco failed to exhaust the administrative remedies that the 1998 amendments enacted.

In *Williams*, the Supreme Court held that Williams, who had paid a tax under protest to remove a lien on her property, had standing to bring a refund action under 28 U.S.C. § 1346, even though the tax she paid was assessed against a third party.  *See* 514 U.S. at 529.  The IRS had placed a lien on the assets of Williams's husband, including his joint interest in their house.  Williams's husband deeded his interest in the house to her in contemplation of divorce, and the IRS filed its notice of tax lien several weeks later.  Williams contracted to sell the house, the IRS provided actual notice of the lien, and the purchaser threatened to sue if the sale were not completed.  Williams had sale proceeds disbursed directly to the IRS to satisfy the lien.  She then sued for a refund, claiming that she had taken her husband's interest in the house free of the IRS lien.  *Id*. at 529-30.  Like Munaco, Williams invoked § 1346(a)(1).  *See id*. at 530.  The government insisted that Williams lacked standing because § 1346 supported only actions by the assessed taxpayer.  The government also argued that an administrative exhaustion requirement applied, *see* 26 U.S.C. § 7422, and that Williams was not a "taxpayer" within the meaning of the statutes.

The Court held that Williams could sue under § 1346.  *Williams*, 514 U.S. at 529.  In its analysis, the court held that Williams was a "taxpayer" under the statutes because she was subject to the tax, even if she was not the one against whom the tax was assessed.  The Court focused heavily on the fact that, if taxpayers in Williams's position could not sue under § 1346, they would be left without a remedy.  *Id*. at 536.  The Court found that the statutory remedies that existed at the time, including actions for wrongful levy and to quiet title, were pre-deprivation remedies and did not provide any realistic alternative to paying the tax.  *See id*. at 536-39.  Williams had paid and needed a post-deprivation remedy, which the Court held that § 1346 supplied.  *See id*. at 537-38.

All else equal, *Williams*'s holding would clearly authorize Munaco's suit under § 1346.  *Cf. Beauchamp v. United States*, 4 F. Supp. 2d 213 (W.D.N.Y. 1998) (applying *Williams* and holding

---

[3]Munaco also argued that his challenge to the validity of the federal tax lien raised a federal question over which the district court could exercise jurisdiction. *See* 28 U.S.C. § 1331.  However, jurisdictional statutes, such as the statute giving federal district courts original jurisdiction of civil actions arising under Constitution, laws, or treaties of United States, do not operate as waivers of sovereign immunity. *Leistiko v. Stone*, 134 F.3d 817, 820 (6th Cir. 1998).

that a plaintiff could sue under § 1346). Unfortunately for Munaco, all else is not equal because Congress amended the Internal Revenue Code in 1998 to provide the specific remedy that the *Williams* Court had found lacking. In particular, Congress enacted the Internal Revenue Service Restructuring & Reform Act of 1998 (IRRA), Pub. L. No. 105-206, § 3106, 112 Stat. 732, 732-34, to address the problem that the Court faced in *Williams*. *See* S. Rep. No. 105-174, at 44-55 (1998). Here then, Congress created the square corners around which plaintiffs in Munaco's position must turn.

The amendments added subsection (b)(4) to 26 U.S.C. § 6325 and subsection (a)(4) to 26 U.S.C. § 7426. Under the new statutory scheme, 26 U.S.C. § 6325(b)(4) requires the IRS to issue a certificate of discharge as a matter of right to third parties under specified circumstances.[4] Pursuant to 26 U.S.C. § 6325(b)(4)(A), the third party has the right to obtain a certificate of discharge by applying to the Secretary of the Treasury for such a certificate and either depositing cash or furnishing a bond sufficient to protect the lien interest of the United States. The Secretary does not have the discretion to refuse to issue a certificate of discharge if this procedure is followed. After the property owner follows the procedure under 26 U.S.C. § 6325(b)(4)(A), the Secretary must refund the amount deposited or release the bond, to the extent that the Secretary determines that the taxpayer's unsatisfied liability giving rise to the lien can be satisfied from a source other than property owned by the third party, or the value of the interest of the United States in the property is less than the Secretary's prior determination of its value. 26 U.S.C. § 6325(b)(4)(B).

Section 7426(a)(4) provides a judicial remedy for violations of § 6325(b)(4).[5] The owner of the property has 120 days after the certificate is issued to challenge the Secretary's determination by bringing a civil action against the United States in federal district court. *Id.* § 7426(a)(4). If no action is filed within the 120-day period, the Secretary has 60 days to apply the amount deposited or collected on the bond, to the extent necessary to satisfy the unsatisfied liability secured by the lien and refund any amount which is not used to satisfy the liability. *Id.* § 6325(b)(4)(C). If an action is filed and the court determines that the value of the interest of the United States in the property is less than the value that the Secretary determined, the court will grant a judgment ordering the refund of the amount of the deposit or a release of the bond to the extent that the amount of the deposit or bond exceeds the value determined by the court. *Id.* § 7426(b)(5). The statute states clearly that "[n]o other action may be brought by such person for such a determination." *Id.* § 7426(a)(4). Plaintiffs must exhaust these administrative remedies prior to bringing suit for damages. *See id.* § 7426(h)(2).

---

[4]26 U.S.C. § 6325(b)(4) provides:
Right of substitution of value.--
    (A) In general.--At the request of the owner of any property subject to any lien imposed by this chapter, the Secretary shall issue a certificate of discharge of such property if such owner--
        (i) deposits with the Secretary an amount of money equal to the value of the interest of the United States (as determined by the Secretary) in the property; or
        (ii) furnishes a bond acceptable to the Secretary in a like amount.
    (B) Refund of deposit with interest and release of bond.--The Secretary shall refund the amount so deposited (and shall pay interest at the overpayment rate under section 6621), and shall release such bond, to the extent that the Secretary determines that--
        (i) the unsatisfied liability giving rise to the lien can be satisfied from a source other than such property; or
        (ii) the value of the interest of the United States in the property is less than the Secretary's prior determination of such value.

[5]26 U.S.C. § 7426(a)(4) provides: "Substitution of value.– If a certificate of discharge is issued to any person under section 6325(b)(4) with respect to any property, such person may, within 120 days after the day on which such certificate is issued, bring a civil action against the United States in a district court of the United States for a determination of whether the value of the interest of the United States (if any) in such property is less than the value determined by the Secretary. No other action may be brought by such person for such a determination."

In this case, Munaco never requested or received a certificate of discharge, never sought administrative redress, and filed suit approximately one year after he paid the lien.  He clearly cannot proceed under §§ 6325 and 7426.  The government argues that the 1998 amendments superseded *Williams*, and the IRS has issued a Revenue Ruling to that effect.  *See* Rev. Rul. 2005-50, 2005-2 C.B. 124, 2005 WL 1710987 ("in light of [the 1998 amendments], a person not liable for an underlying tax may not file a refund action under the holding of *United States v. Williams*").[6]

The few courts that have addressed this issue have generally ruled in favor of the IRS's position that the 1998 amendments must be followed before one may sue in district court.  In the Eastern District of Kentucky, the court confronted a situation very similar to Munaco's and held that the 1998 amendments had indeed superseded *Williams* and that the court lacked jurisdiction because the plaintiff had not exhausted its administrative remedies.  *See City of Richmond v. United States*, 348 F. Supp. 2d 807, 812-14 (E.D. Ky. 2004).  More recently, the Court of Federal Claims canvassed the relevant authority and concluded that it lacked jurisdiction under § 1346(a)(1) to hear "refund suits brought by third party real property owners who wish to challenge tax lien-related collections by the IRS and who have not pursued the remedy provided to them by §§ 6325(b)(4) and 7426(a)(4)."  *Four Rivers Invs., Inc. v. United States*, 77 Fed. Cl. 592, 603 (Fed. Cl. 2007).  Only one court has held that § 1346(a)(1) continues to provide jurisdiction for a third-party refund claim.  *See Crytser v. United States*, No. CV-06-175-LRS, 2006 WL 3203585, at *3 (E.D. Wash. Nov. 2, 2006).  However, in that case, the district court also held that the administrative exhaustion requirement applied and dismissed the suit because the plaintiff had not exhausted her administrative remedies.  *See id.* at *3-*4; *see also Coutant v. United States*, No. 00-14163-CV-MOORE, 2002 WL 471769, at *3 (S.D. Fla. Feb. 26, 2002) (holding that administrative exhaustion was required prior to bringing suit under § 7426(a)(4)).[7]

The Supreme Court has not decided whether *Williams* remains good law.  However, in a recent case, the Court analyzed whether *Williams*'s holding that a third party could challenge a wrongful lien under § 1346 should be extended to cover a third party who was challenging a wrongful levy.  *See EC Term of Years Trust v. United States*, 127 S. Ct. 1763, 1765 (2007) (unanimous).  In that case, the plaintiff sued under § 7426(a)(1), but missed the nine-month statute of limitations applicable to that sub-section.  *Id.* at 1766-67.  After the district court dismissed the case, the plaintiff sued again, this time under § 1346.  *Ibid.*  The district court dismissed the new case, reasoning that § 7426(a)(1) provided the exclusive remedy, and the Fifth Circuit affirmed.  Because the Ninth Circuit had previously held that § 7426(a)(1) was not the exclusive remedy and that a suit could continue under § 1346, *see WWSM Invs. v. United States*, 64 F.3d 456 (9th Cir. 1995), the Supreme Court granted certiorari, affirmed the Fifth Circuit, and rejected the Ninth Circuit precedent.  *See EC Term of Years Trust*, 127 S. Ct. at 1767.

In *EC Term of Years Trust*, the Court clarified that *Williams*'s holding rested "on the specific understanding that no other remedy . . . was open to the plaintiff in that case."  *Id.* at 1768.  In *EC Term of Years Trust*, however, the plaintiff "could have made a timely claim under § 7426(a)(1) for the relief it now seeks under § 1346(a)(1)."  *Ibid.*  The Court applied the general principle that "a precisely drawn, detailed statute pre-empts more general remedies."  *Brown v. GSA*, 425 U.S. 820, 834 (1976) (quoted in *EC Term of Years Trust*, 127 S. Ct. at 1767).  Moreover, the Court noted that it "braces the preemption claim when resort to a general remedy would effectively extend the statute of limitations period for the specific one."  *EC Term of Years Trust*, 127 S. Ct. at 1767.

---

[6]While Revenue Rulings are not entitled to *Chevron* deference, *see OfficeMax, Inc. v. United States*, 428 F.3d 583, 595 (6th Cir. 2005), they do provide fair warning of the IRS's understanding of the law to potential litigants and their attorneys.

[7]We also note that the Ninth Circuit has reached the same conclusion that we do in a similar case just decided. *See First Am. Title Ins. Co. v. United States*, No. 05-35520, 2008 WL 795356, at *2 (9th Cir. Mar. 27, 2008).

Accordingly, the Court held that the plaintiff "missed the deadline for challenging a levy under § 7426(a)(1), and may not bring the challenge as a tax refund claim under § 1346(a)(1)." *Id*. at 1769.

Applying that reasoning to this case, we hold that Munaco's failure to follow the statute and to seek a certificate of discharge bars his suit. Thanks to the 1998 amendments, Munaco had access to a post-deprivation administrative remedy under § 6325(b)(4) and a judicial remedy under § 7426(a)(4). Allowing Munaco to sue under § 1346 would ignore the fact that Congress passed a specific statutory remedy for persons in his position and would render meaningless the 120-day limitations period. Congress was quite clear that, other than a suit following receipt of a certificate of discharge, "[n]o other action may be brought by such person" for a review of the value of the United States's interest in a lien. 26 U.S.C. § 7426(a)(4). As the Supreme Court has stated, "[d]espite its spacious terms, § 1346(a)(1) must be read in conformity with other statutory provisions which qualify a taxpayer's right to bring a refund suit upon compliance with certain conditions." *United States v. Dalm*, 494 U.S. 596, 601 (1990).

The record is not clear about why Munaco failed to apply for a certificate of discharge and exhaust his administrative remedies. Had he done so, the district court presumably would have reached the merits of his claim. With more than $300,000 at stake, Munaco and his counsel had adequate incentive to apprise themselves of the statutory requirements. Unfortunately for Munaco, his argument cannot be heard. Congress enacted a specific statutory scheme to provide a remedy for persons who find themselves precisely in his position. Munaco ignored that scheme at his own peril, and we are not at liberty to dispense with it.

### III

Therefore, for the reasons set out above, we AFFIRM the district court's decision to dismiss Munaco's suit against the United States.